Terril A. KRAUSHAAR,
Plaintiff–Appellant,

v.

Earl K. FLANIGAN, Fred Winterroth, Robin Davis, and Tazewell County, Defendants–Appellees.

No. 94–1483.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1994.

Decided Jan. 13, 1995.

Christopher P. Ryan (argued), Kingery, Durree, Wakeman & Ryan, Peoria, IL, for plaintiff-appellant.

Deborah L. Ahlstrand, Jerald S. Post (argued), Asst. Attys. Gen., Civ. Appeals Div., Chicago, IL, Carol J. Barlow, Asst. Atty. Gen., Environmental Control Div., Springfield, IL, for Earl R. Flanigan and Fred Winterroth.

Stewart J. Umholtz (argued), Office of the State's Atty. of Tazewell County, Pekin, IL, for Tazewell County and Robin Davis.

Before BAUER and FLAUM, Circuit Judges, and FOREMAN, District Judge.*

FOREMAN, District Judge.

Terril A. Kraushaar filed various federal and state claims challenging his arrest for driving under the influence and a subsequent strip search at the jail while being processed for the traffic offense. We affirm the judgment entered in favor of the defendants on all claims that were actually decided by the trial court but remand for determination of a claim that was overlooked below.

## I. BACKGROUND

This case arises out of Kraushaar's arrest at a "roadside safety check" conducted by state police on December 18, 1988, in Tazewell County, Illinois. Kraushaar, who was 19 at the time, had just left a party at which he had consumed several beers. State trooper Earl K. Flanigan stated that while he was checking Kraushaar at the roadside stop, he saw Kraushaar make furtive hand movements around the waist of his pants. Flanigan accused Kraushaar of hiding something in his pants but Kraushaar stated that he was tucking in his shirt.

Flanigan ordered Kraushaar out of the vehicle. He stated that he smelled alcohol on Kraushaar's breath and that Kraushaar was unable to perform several field sobriety tests. As a result, Flanigan informed Kraushaar that he was placing him under arrest. He stated that Kraushaar continued making furtive motions around his waistband. Flanigan and trooper Fred Winterroth conducted a pat-down search of Kraushaar but did not find any weapons or contraband.

Kraushaar stated that Flanigan reached inside Kraushaar's pants, unsnapping several buttons of his fly. He testified that Flanigan asked him to undo the last two buttons and Kraushaar complied, which caused his pants to fall down around his thighs. Flanigan contradicted this testimony, stating that he had merely checked Kraushaar's waistband by placing his thumb in the waistband up to the first knuckle.

When Kraushaar failed to comply with a request to get spread-eagle on the car, one of the officers kicked Kraushaar's legs apart. Kraushaar, who said he was unable to comply because his pants were falling down, testified that he was kicked so hard that it caused bruises. Winterroth admitted kicking Kraushaar's legs apart but stated he did not do so hard enough to cause bruises.

Flanigan took Kraushaar to the Tazewell County Jail and charged him with driving under the influence (DUI). Flanigan attempted to conduct a breathalyzer test at the station but said Kraushaar failed to blow a sufficient volume of air to make the breathalyzer register.

A second pat-down search at the jail failed to turn up any weapons or contraband. Kraushaar was then subjected to a strip search by jailer Robin Davis. Flanigan was present in the doorway at least part of the time. Kraushaar was told to remove his pants and lower his underwear to permit inspection. No weapons or contraband were found.

There was conflicting testimony as to whether this search had been properly authorized. The desk sergeant, Robert W. Lickiss, does not remember the incident and no authorization form has been located. However, Davis states that Lickiss gave oral permission for the search by telephone. Lickiss stated that he would not have given authorization for a strip search based solely on Flanigan's statement that the arrestee put his hands down his pants.

To contradict Flanigan's assertion that Kraushaar was "falling down drunk" at the time of his arrest, Kraushaar points to the fact that he was able to stand by himself for the strip search and remove his pants with-

* Hon. James L. Foreman, of the Southern District of Illinois, is sitting by designation.

out any assistance within an hour after his arrest. Kraushaar's parents, a brother, and a friend also testified that Kraushaar did not appear intoxicated either before the incident or afterward.

The DUI charges against Kraushaar were dismissed for lack of probable cause to arrest Kraushaar or to believe that Kraushaar was operating a vehicle under the influence of alcohol. Kraushaar subsequently brought a claim against the state troopers, the county, and county jailer under 42 U.S.C. § 1983, alleging the use of excessive force and an illegal strip search. He also brought state law claims sounding in assault and battery, false arrest, and malicious prosecution.

In a pretrial motion hearing, District Judge Joe B. McDade held that collateral estoppel would not be applied to the findings of no probable cause made by the state courts in the underlying DUI prosecution. He subsequently granted summary judgment on several counts against the troopers, finding that state law provided immunity for non-willful or wanton acts.[1] He also granted summary judgment on several counts against the jailer and the county, finding that Davis had not committed a battery because there had been no physical touching and that the strip search did not violate Kraushaar's constitutional rights.

The parties stipulated to a trial before Magistrate Judge Robert J. Kauffman, who found that the state troopers had probable cause for the arrest and for conducting the strip search of Kraushaar at the jail and that no unnecessary force was used in effecting the arrest. Kraushaar appeals from the final judgment entered in favor of the defendants.

## II. ANALYSIS

### A. Summary Judgment in Favor of Davis and Tazewell County

The appellant argues that the district court erred in granting summary judgment in fa-

vor of jailer Davis on the grounds that the strip search at the jail did not violate his constitutional rights. He also contends that the district court erred in concluding that Davis's conduct did not constitute an assault and battery because Davis had not touched Kraushaar during the search.

Because these rulings came on a motion for summary judgment, they are to be reviewed de novo. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir.1992); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370 (7th Cir.1992).

> In order to uphold a grant of summary judgment, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion" ... and conclude there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*McCoy*, 957 F.2d at 370. "Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the non-moving party." *Id.*

### 1. Constitutionality of the Strip Search

Count IX of the amended complaint alleged that the strip search conducted by Davis at the jail violated Kraushaar's Fourth and Fourteenth Amendment rights to due process and freedom from unreasonable search and seizure. The complaint alleged that there was no probable cause to believe that Kraushaar was guilty of any crime or that he was in possession of a weapon or other controlled substance. The complaint further alleged that the search was conducted in violation of the Illinois Code of Criminal Procedure's requirements for strip searches.[2]

The district court granted summary judgment in favor of Davis on the grounds that

---

1. This ruling disposed of claims for simple assault and battery against Flanigan and Winterroth (Counts I and XI) and false arrest and imprisonment against Flanigan (Count III). It has not been appealed.

2. The Code provides, in pertinent part:
 (c) No person arrested for a traffic, regulatory or misdemeanor offense, except in cases

involving weapons or a controlled substance, shall be strip searched unless there is a reasonable belief that the individual is concealing a weapon or controlled substance.
 (d) "Strip search" means having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual inspection

probable cause existed for the limited strip search based upon the information provided by trooper Flanigan—i.e., that Flanigan believed that Kraushaar had hidden something in his pants. The court acknowledged that the search did not comply with all of the requirements set forth by the state statute governing strip searches because there was no written authorization form and or a written report of the search. However, the court held that the state statute did not create a federally protected liberty interest and, therefore, failure to comply with the statute's requirements was not actionable under 42 U.S.C. § 1983. We find no error in either ruling.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause...." U.S. Const. amend. IV. To determine whether a search is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

■ A detention facility is a "unique place fraught with serious security dangers[,]" *id.,* and officials have a legitimate and substantial need to prevent arrestees from bringing weapons or contraband into such a facility. *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir.1983). Balanced against

this interest, however, is the fact that strip searches involving visual inspection of the genital areas are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission...." *Id.* at 1272. Accordingly, this court has held that it is unreasonable to conduct a strip search of a person arrested for a traffic offense unless authorities have a reasonable suspicion that the arrestee is concealing weapons or contraband on his person. *Id.* at 1273. Whether a suspicion is reasonable depends upon such factors as "the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Giles v. Ackerman,* 746 F.2d 614, 617 (9th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

■ The undisputed facts show that Kraushaar had been arrested for driving under the influence pursuant to 625 Ill.Comp. Stat. 5/11–501(a) and the arresting officer informed Davis that the officer believed that Kraushaar had put something down his pants. As the district court pointed out, Davis and Flanigan could reasonably infer that an arrestee would not normally put an item inside his pants unless it was something he intends to hide from authorities. That inference is not an "inchoate and unparticularized suspicion or 'hunch,'" *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968), but rather "the sort of 'common-sense conclusio[n] about human behavior' upon which 'practical people'—including government officials—are entitled to rely." *New Jersey v. T.L.O,* 469 U.S. 325, 346, 105 S.Ct. 733, 745, 83 L.Ed.2d 720 (1985)

of the genitals, buttocks, anus, female breasts or undergarments of such person.

. . . . .

(f) Every peace officer or an employee of a police department conducting a strip search shall:
(1) obtain the written permission of the police commander or an agent thereof designated for the purposes of authorizing a strip search in accordance with this section.
(2) Prepare a report of the strip search. The report shall include the written authorization required by paragraph (1) of this subsection (f), the name of the person subjected to the search, the names of the persons conducting the search, and the time, date and place of the

search. A copy of the report shall be provided to the person subject to the search.

. . . . .

(h) Any police officer or employee who knowingly or intentionally fails to comply with any provision of this Section is guilty of official misconduct as provided in Section 103–8 [725 ILCS 5/103–8]; provided however, that nothing contained in this Section shall preclude prosecution of a peace officer or employee under another section of this Code.
(i) Nothing in this Section shall be construed as limiting any statutory or common law rights of any person for purposes of a civil action or injunctive relief.
725 Ill.Comp.Stat. 5/103–1 (1993).

(quoting *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Indeed, if Davis had not conducted a search based upon this knowledge, he would have been open to negligence charges if Kraushaar had in fact concealed a weapon or contraband in his pants and that item ultimately caused a death or injury inside the jail.

Kraushaar argues that while Davis may have had grounds to believe that Kraushaar put "something" in his pants, there was no reason to infer that the item was a weapon or contraband. However, Kraushaar ignores the fact that § 11–501 of the Illinois Motor Vehicle Code makes it a crime to drive "while under the influence of alcohol, *other drug,* or combination thereof." 625 Ill.Comp.Stat. 5/11–501(a) (emphasis added). Although there was strong evidence of alcohol intoxication in Kraushaar's case, that does not rule out the possibility of impairment by drugs as well.

The appellant points to decisions by other circuits which suggest that a DUI is "not commonly associated by its very nature with the possession of weapons or contraband...." *Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984); *Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). Absent in those cases, however, was any additional factor that would suggest that the DUI arrestee might possess contraband. In Kraushaar's case, on the other hand, the fact of his arrest was coupled with specific conduct—i.e., the furtive hand movements that suggested that he was attempting to hide something in his pants. Because an officer cannot rule out the possibility that a DUI is drug-related, the combination of these facts gives rise to a reasonable suspicion that Kraushaar may have been trying to hide drugs.

The appellant also cites to several Tenth Circuit decisions which suggest that jails can meet their security concerns by less-intrusive means, such as a thorough pat-down search. *See, e.g., Cottrell v. Kaysville City, Utah,* 994 F.2d 730, 735 (10th Cir.1993); *Chapman v. Nichols,* 989 F.2d 393, 396–97 (10th Cir. 1993); *Hill,* 735 F.2d at 394. In that court's view, "[a]lmost anything that the examining officer could have found through [a strip search] would have already been discovered during the pat down search that had been conducted on plaintiff's arrival at the jail." *Hill,* 735 F.2d at 394. However, in each of those cases, the Tenth Circuit found no circumstances that would suggest that the arrestee was harboring weapons or contraband. Thus, the strip search was not used to recover an item that was reasonably believed to be concealed under the arrestee's clothing; rather, the search was used as a means of *discovering* whether an arrestee possessed such items. In Kraushaar's case, on the other hand, the arresting officer had a reasonable suspicion that Kraushaar had hidden some type of contraband in his pants. Therefore, for purposes of jail security, it was necessary to conduct a more intrusive search to either dispel or confirm that suspicion. Where an arrestee is wearing blue jeans or another heavy material, even the most thorough pat-down search will not necessarily turn up small items such as several hits of LSD on postage stamps, a small rock of crack cocaine, or a razor blade. Accordingly, it is not unreasonable to conduct a limited strip search, as Davis performed on Kraushaar, when an officer is trying to recover suspected contraband.

■ The appellant argues that Davis had not observed Kraushaar's conduct for himself and, therefore, Davis's only basis for conducting the search was officer Flanigan's statement that he saw Kraushaar put something down his pants. We find nothing improper in this procedure. The Supreme Court has recognized that officers in one police department may properly arrest a suspect based upon a bulletin or flyer issued by another police department even though the arresting officers themselves were unaware of specific facts that established probable cause for the arrest. *United States v. Hensley,* 469 U.S. 221, 229–33, 105 S.Ct. 675, 680–83, 83 L.Ed.2d 604 (1985). It follows that if trooper Flanigan had observed facts that would establish a reasonable suspicion that Kraushaar had been concealing a weapon or contraband, then jailer Davis would be justified in relying on Flanigan's description of

those facts; Davis need not have observed the conduct for himself.

### 2. Compliance with the Strip Search Statute

The appellant next argues that the district court erred in holding that Davis's failure to comply with all of the requirements of the Illinois strip search statute did not give rise to a cause of action under 42 U.S.C. § 1983. Although he recognizes that a claim under § 1983 must allege "the violation of a right secured by the Constitution and laws of the United States," *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988), the appellant asserts that his claim meets this requirement because the alleged violation of the state statute implicated his rights under the Fourteenth Amendment's Due Process Clause.

Analysis of the appellant's argument is somewhat difficult because the Fourteenth Amendment provides both substantive and procedural due process rights, *see United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987), and the appellant's brief fails to identify the theory he intends to pursue. Close scrutiny, however, shows that his claim must fail under either theory.

■ First, with regard to substantive due process, the Supreme Court has held that the Fourteenth Amendment's Due Process Clause prohibits a state from violating a fundamental right—i.e., one that is among those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Duncan v. Louisiana,* 391 U.S. 145, 148, 88 S.Ct. 1444, 1446–47, 20 L.Ed.2d 491 (1968). The Supreme Court has used a process of selective incorporation to find that most, if not all, of the provisions of the Bill of Rights constitute such fundamental liberty interests. *Planned Parenthood v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992).

The Supreme Court has also gone on to identify other significant interests that are not specifically enumerated in the Constitution but which deserve protection under the Fifth and Fourteenth Amendment's due process clauses. *See id.* at —— — ——, 112 S.Ct. at 2804–08 (describing cases in which substantive due process rights have been recognized). However, the rights encompassed by this theory have been carefully limited to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994).

The appellant argues that the state of Illinois has created a federally protected liberty interest by enactment of the state statute and regulations governing strip searches. In support of this argument, he cites the decision in *Hewitt v. Helms,* 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983), which stated that "[a] State may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." However, what appellant fails to recognize is that the Supreme Court has never held that such state-created interests constitute a fundamental liberty interest protected under a *substantive* due process theory. Rather, the Court has analyzed state-created liberties under a *procedural* due process theory.

We find, therefore, that the state strip search statute does not create a substantive due process right. There is no question that Kraushaar's Fourth Amendment rights against unreasonable searches and seizures are protected under the Fourteenth Amendment's Due Process Clause. *See Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967) (holding Fourth Amendment's prohibition against unreasonable searches and seizures enforceable against the states through the Fourteenth Amendment). However, as this court made clear in the recent case of *Doe v. Burnham,* 6 F.3d 476, 480 (7th Cir.1993), the provisions of the state statute are irrelevant to that analysis—i.e., plaintiffs cannot rely upon provisions of state law to determine what conduct is reasonable under the federal Constitution.

*Burnham,* like the case at bar, involved a § 1983 claim alleging that the police had conducted an illegal strip search of an arrestee. At issue on appeal was the propriety of a jury instruction on the Fourth Amendment's standard for reasonableness. The

first part of the instruction correctly set forth the law when it stated that: "Law enforcement officers may not strip search an individual for contraband unless the officers have a reasonable basis to believe at the time of the search that the individual is concealing contraband on his or her body. The test of reasonableness requires a balancing of the privacy interests involved in the search and the government's need for conducting the search." However, the last part of the instruction improperly tied the reasonableness of the search to the Illinois strip search statute.

Although the instruction initially encouraged the jury to consider the constitutional standards for reasonableness, it ultimately required the jury to confine its assessment of reasonableness to the norms of Illinois law. The problem is that the norms embodied in the Constitution and the norms authorized by the Illinois legislature are not necessarily interchangeable. In fact, a state may provide greater protections under its laws than the Constitution requires. . . . The Illinois legislature's sense of reasonableness cannot be grafted onto the Fourth Amendment. Illinois may set its own standards and provide remedies under its laws for their violation. But just because Illinois chooses to regulate police behavior in a certain way does not mean the police officers violate the Constitution by transgressing those rules.

*Id.* at 480 (citations omitted). In short, *Burnham* reemphasizes that "the violation of state law is not itself the violation of the Constitution." *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). Certainly "[a] state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules." *Id.*

■ Turning to the procedural due process analysis, we must determine whether the state statute in fact created a liberty interest that would trigger a constitutional violation if fair procedures were not followed

to deprive a plaintiff of that interest. As the appellant acknowledges, courts will find a liberty interest only if the state's statute or regulation uses "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed," *Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871, and contains substantive standards or criteria for decisionmaking as opposed to vague standards that leave the decisionmaker with unfettered discretion. *Miller v. Henman,* 804 F.2d 421, 427 (7th Cir.1986), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987).

In this case, the strip search statute uses mandatory language in stating that "[n]o person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is a reasonable belief that the individual is concealing a weapon or controlled substance." 725 Ill. Comp.Stat. 5/103–1(c). Arguably under *Hewitt,* this portion of the statute creates a liberty interest in being free from unreasonable strip searches. However, as the district court pointed out, this interest is virtually identical to the appellant's existing Fourth Amendment right. Thus compliance with the Fourth Amendment would satisfy the state statutory requirement as well.

The appellant argues that the state statute goes on to provide that any police officer who conducts a strip search "shall" obtain written permission from a designated person and prepare a report regarding the search. Based upon this mandatory language, the appellant argues that the statute creates a liberty interest in being free from a strip search unless a command or watch officer issues a written authorization for the search and a written report is subsequently prepared.

■ This court has "repeatedly rejected the notion that any and all state ... rules and regulations containing such language automatically create 'legitimate claims of entitlement' triggering the procedural protections of the due process clause." *Colon v. Schneider,* 899 F.2d 660, 667 (7th Cir.1990). Some statutes and regulations create only guidelines that direct the manner in which

state personnel exercise their discretion to perform certain activities. *See id.; Miller,* 804 F.2d at 424. These types of guidelines do not create substantive rights or legally enforceable expectancies. *Miller,* 804 F.2d at 424.

■ By requiring written authorization and a written report, the Illinois statute appears to be establishing guidelines to direct state personnel in exercising their discretion to conduct a strip search rather than creating an expectancy that a strip search will not be done unless those requirements are met. However, even if we were to find that the strip search statute did create an expectancy, that would not end the inquiry. Under a procedural due process analysis, the deprivation of the liberty interest is not itself unconstitutional; what is unconstitutional is the deprivation without proper process (i.e. fair procedures). *Colon,* 899 F.2d at 666. Thus, the appellant must go on to prove that he was denied this expectancy without due process.

■ This analysis demonstrates the fundamental flaw in the appellant's case. He argues that he was denied the process set forth in the statute—i.e., obtaining written permission from a commander or watch officer before the search was conducted. However, it is well settled that "[f]ederal judges do not enforce state-created procedures in the name of the Constitution." *Gordon v. Degelmann,* 29 F.3d 295, 301 (7th Cir.1994).

> [S]tate procedural protections cannot define what process is due. The Fourteenth Amendment's limitation on state action would be illusory indeed if state practices were synonymous with due process.... [T]he task of defining the procedural protections which attach to [a protectable lib-

erty interest] is wholly a matter of federal constitutional law and is accomplished through the balancing analysis of *Matthews* [*v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ]. [3]

*Colon,* 899 F.2d at 670 (internal quotations omitted).

What the appellant is really trying to argue is that the state can never conduct a strip search without first obtaining this written permission. That argument implicates a substantive due process, rather than a procedural due process, analysis. *See Miller,* 804 F.2d at 427 ("the nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides."). As discussed above, state-created liberty interests do not create federally enforceable rights.

In short, Davis's failure to follow procedures that are required by state law, but not by the federal Constitution, establishes only a violation of the state law. *See Gordon,* 29 F.3d at 301. The district court, therefore, properly held that the appellant could not rely upon the state strip search statute to establish either a substantive or procedural violation of his federal rights.[4]

### 3. The Assault and Battery Charge

■ The appellant argues that the district court erred in granting summary judgment to Davis and the county on Count VI, which alleged that the strip search was an unlawful assault and battery. He acknowledges that he was not touched by Davis during the search and, therefore, Davis's conduct does not constitute a battery as defined in § 12–3

---

**3.** *Matthews* provides that three factors must be balanced in order to determine what process is due in a particular situation:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional and substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

**4.** Because we find that there was no constitutional violation, it is unnecessary to consider whether Davis was entitled to qualified immunity. *See Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1328 (7th Cir.1993) (Easterbrook, J., concurring) ("once we conclude ... that the individual defendants respected [the plaintiff's] constitutional rights[,]" the case is over and it is unnecessary to determine whether a defendant is entitled to qualified immunity).

of the Illinois Criminal Code.[5] However, he argues that the conduct constitutes an assault because he was instructed by Davis to remove his pants and lower his underwear for a visual inspection with the implication that if he did not do so voluntarily, those tasks would be performed for him by Davis.

Under state law, "[a] person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery." 720 Ill.Comp.Stat. 5/12–1(a). The key phrase for purposes of this analysis is "without lawful authority." Obviously if Davis was justified in conducting the strip search, as we have found, he had proper authority to imply that he would carry out the search himself if Kraushaar had failed to comply with Davis's instructions. The district court, therefore, properly granted summary judgment against the appellant on this count.

### B. Collateral Estoppel Effect of Finding on Probable Cause

The issue of probable cause—i.e., whether trooper Flanigan had probable cause to arrest Kraushaar on the DUI count—was a key element in several of the appellant's claims against the defendants. Because the state courts had quashed the arrest based upon a lack of probable cause, the appellant argued that the defendants were collaterally estopped from relitigating the probable cause issue in this case.

The Seventh Circuit has held that the doctrine of collateral estoppel may be used to preclude relitigation of issues in a subsequent proceeding when: "(1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986). There is no dispute that the latter three elements have been met in this case; the decision, therefore, turns upon the first element, identity of the party.

As a matter of due process, collateral estoppel can be used to bind only those persons who were parties or who are in privity with parties to the prior proceeding. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The Supreme Court has also held that the doctrine cannot be used offensively—i.e., when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost in another action—where the application of the doctrine "would be unfair to a defendant[.]" *Id.* at 331, 99 S.Ct. at 652. When analyzed under either of these principles, use of collateral estoppel in this case would be inappropriate.

Although "[s]trict identity of the parties is not necessary to achieve privity[,] ... the parties must be 'so closely aligned that they represent the same legal interest.'" *Kunzelman,* 799 F.2d at 1178 (citations omitted). "The question ... is whether the defendants were sufficiently involved in the conduct of the state court litigation to actuate the principles of collateral estoppel." *Id.* In this case, as in *Kunzelman,* the state itself was the party to the original criminal action. The state's attorney prosecuted the DUI charge and did not even call Flanigan or Winterroth as witnesses in the case, choosing instead to rely solely upon Flanigan's arrest report. Therefore, we find that the defendants in this case, like those in *Kunzelman,* did not have the requisite privity to the prior proceeding.

Our decision in *Williams v. Kobel,* 789 F.2d 463 (7th Cir.1986), applies a similar analysis in a case virtually identical to the case at bar. The plaintiff in *Williams* had been arrested for arson but the charges were later dismissed at a preliminary hearing for lack of probable cause. The plaintiff brought a § 1983 suit against the arresting officers, alleging that they violated his constitutional rights by arresting him without probable cause. The decision does not discuss whether the defendants were parties or privies to

---

**5.** Section 12–3 defines battery as conduct of a person which "by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 Ill.Comp.Stat. 5/12–3.

the original criminal proceeding but, instead, viewed the issue as one of fairness under the *Parklane Hosiery* standard—i.e., whether the defendants had "a full and fair opportunity in the preliminary hearing to litigate the issue of whether they had probable cause to arrest Williams." *Id.*

The decision noted that the arresting officers had no tactical control over the presentation of the evidence, and, in fact, were not even called as witnesses in the proceeding. Under these circumstances, the court concluded, "the defendant officers did not receive their full panoply of rights in that they were given no opportunity to challenge the testimony and/or [the plaintiff's] statements much less given the opportunity to present any evidence on their own behalf as to the issue of whether they had probable cause to arrest Williams." *Id.* at 470.

The same circumstances are present in the case at bar. In order to avoid the expense of bringing in witnesses, the state's attorney relied solely upon Flanigan's arrest report to establish the state's case in Kraushaar's statutory summary suspension hearing. Kraushaar testified in his own behalf and presented testimony from his family members and a friend to refute the arrest report's statements concerning his intoxication. The state judge ultimately ruled in his favor, finding that "the arresting officer did not have reasonable grounds to believe that Kraushaar was driving or in actual physical control of a motor vehicle while under the influence...."

Despite this ruling, the state's attorney agreed that "rather than waste time," the judge could use the same evidence to rule on Kraushaar's subsequent motion to quash his arrest. Not surprisingly, the judge quashed the arrest, finding that "[t]he arresting officer did not have probable cause to arrest Defendant and did not have probable cause to believe Defendant was driving or in actual physical control of a motor vehicle while under the influence of alcohol."

The appellant argues that prosecution of DUI charges often proceeds on the basis of police reports alone and that Flanigan himself admitted that there was nothing that he would have added by way of personal testimony to the materials he placed in his report. However, the appellant fails to recognize the significance of Flanigan's ability to present live testimony as opposed to a cold report. Given the conflicting testimony, resolution of the probable cause issue necessarily turned upon the credibility of the various witnesses and, as discussed below, credibility determinations rest in large part upon the trier of fact's ability to observe the witnesses' demeanor and appearance.

Because Flanigan did not have an opportunity to testify on his own behalf in the state court proceeding and did not have the opportunity to present testimony from other witnesses to corroborate his own observations, he did not have a full and fair opportunity to litigate the issue of probable cause. Therefore, we find that the district court properly refused to hold that the defendants were collaterally estopped from relitigating this issue in the federal lawsuit.

### C. Magistrate's Judgment for Defendants Flanigan and Winterroth

After hearing all of the testimony in a bench trial, the magistrate judge found that there had been probable cause for Kraushaar's arrest on the DUI charge and probable cause to believe that he was hiding something in his clothing, thereby giving rise to the strip search. However, the magistrate judge found that Flanigan did not request or participate in the strip search at the jail. He further found that Winterroth did not use unnecessary force in affecting Kraushaar's arrest. Accordingly, he found for the defendants on the remaining counts in the complaint, which included malicious assault and battery, malicious false arrest, malicious prosecution, and excessive force against Flanigan (Counts II, IV, V, VII and VIII) and excessive force against Winterroth (Count X).

The appellant alleges error in all of these rulings. To the extent that the magistrate judge's rulings involve findings of fact, those findings "shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P.

52(a). Conclusions of law are reviewed *de novo*.

### 1. Probable Cause for the Arrest

██ The appellant concedes that Flanigan's testimony, if credible, would demonstrate that the officer had reason to believe that Kraushaar was intoxicated at the time of his arrest. Flanigan observed that Kraushaar smelled of alcohol; had slammed on his brakes and ended up at an angle at the roadside checkpoint; was incoherent; failed roadside sobriety tests; had difficulty standing and complying with a request to spread his legs for a pat-down search; and failed on three attempts to blow a sufficient volume of air for the breathalyzer test.

The appellant argues, however, that testimony from his family and a friend contradict that description. Although he acknowledges that this conflicting testimony raises a credibility issue for the magistrate judge to resolve, he argues that there is one objective fact which clearly proves that he could not have been intoxicated as described by Flanigan: the fact that at the time of the strip search, he was able to stand and remove his pants without any assistance or without leaning on any furniture or walls.

We are unpersuaded that this one fact destroys the credibility of Flanigan's testimony. The record shows that at least forty minutes had elapsed between Kraushaar's arrest and his arrival at the jail. Thus, it is likely that his level of intoxication was somewhat diminished by the time of the search. The fact of his arrest itself also was likely to have had a significant sobering effect. Therefore, although Flanigan reported that Kraushaar was unable to perform sobriety tests at the scene, that does not necessarily mean that Kraushaar would have been unable to undress himself at the jail. The time lapse also would explain why Kraushaar might have appeared unimpaired to his parents, who bonded him out of the jail more than an hour and a half after his arrest and more than three hours after Kraushaar had stopped drinking.

Flanigan's testimony regarding Kraushaar's level of intoxication at the scene was corroborated by trooper Winterroth. More-over, Kraushaar himself conceded that he had been drinking, had slammed on his brakes at the checkpoint, and had difficulty communicating with Flanigan. Although he blames this latter fact on Flanigan's attitude, Kraushaar's explanation does not dispel Flanigan's perception of Kraushaar's conduct.

It is also significant to note that jailer Davis's testimony corroborates that of Flanigan as to the state of Kraushaar's clothing when he arrived at the jail. Kraushaar claimed that his pants were unbuttoned and falling down, a fact that Flanigan denied. Davis, who was present when Flanigan and Kraushaar walked into the building, said he did not notice Kraushaar's pants or shirt being undone. Had that been the case, Davis said he would have noticed and remembered it. Although Davis's testimony does not directly corroborate Flanigan's observations of Kraushaar's level of intoxication, his testimony does support Flanigan's credibility over that of Kraushaar.

The credibility of Kraushaar's friend, Derrick Newnam, is undermined to some extent by the testimony of appellant's brother. Newnam, who was riding in the truck with Kraushaar, stated that he was not intoxicated when they arrived at the checkpoint. However, Timothy Kraushaar stated that Newnam "was feeling pretty good" when he left the party, which was a short time before Newnam and Terril Kraushaar arrived at the checkpoint.

Under the clearly erroneous standard, the magistrate judge's factual findings—including his credibility determinations—will be reversed only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). As the trier of fact, the magistrate judge had

> "the best 'opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements,'

as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *United States v. Nururdin,* 8 F.3d 1187, 1194 (7th Cir.1993) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1328, 127 L.Ed.2d 676 (1994). Thus, special deference must be accorded to his credibility findings. *United States v. Hamm,* 13 F.3d 1126, 1129 (7th Cir.1994).

The testimony in this case left the magistrate judge with the task of deciding between two conflicting, but equally plausible, explanations of the events that took place with respect to Kraushaar's arrest. "Where there are two permissible views of the evidence, the factfinder's choice cannot be clearly erroneous." *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. Therefore, based upon the testimony as a whole, as well as the magistrate judge's unique ability to observe the witnesses as they testified, we cannot say that the magistrate judge's findings were clearly erroneous.

### 2. Flanigan's Role in the Strip Search

The appellant argues that the magistrate judge erred in finding that Flanigan had not requested the strip search at the jail but that the officer had probable cause to believe that Kraushaar was attempting to conceal something in his clothing. As explained in detail above, we find that Flanigan had a reasonable suspicion that Kraushaar may have been hiding contraband in his pants and, therefore, Kraushaar was properly subjected to a strip search at the jail. Because there was no violation of Kraushaar's constitutional rights with respect to that search, we need not determine whether Flanigan had actually requested the search or otherwise participated in it to a degree that would subject him to liability.

 The appellant points out, however, that the magistrate judge failed to address the appellant's claim that a strip search occurred at the scene of the arrest. Kraushaar and Newnam testified that Flanigan had unbuttoned Kraushaar's pants, causing them to fall around his thighs and expose his underwear. Flanigan and Winterroth testified that Flanigan had merely stuck his thumb inside Kraushaar's waistband as part of the pat-down search. Unfortunately, the magistrate judge's findings make no reference whatsoever to any of this contradictory evidence.[6]

 Although the magistrate judge found probable cause for the arrest and found no evidence that the officers had used unnecessary force in effecting the arrest, those findings do not resolve the question of whether Flanigan unbuttoned the plaintiff's pants. Obviously, the magistrate judge re-

---

**6.** Indeed, the magistrate judge's ruling was based entirely on the following cursory findings:

1. I find that there was probable cause for Troopers Flanigan and Winterroth to arrest the plaintiff for driving under the influence of alcohol in violation of Illinois law. This is predicated upon credible evidence of plaintiff's difficulty in controlling and stopping the pick-up truck he was driving. After stopping and while talking to Trooper Flanigan plaintiff permitted the truck to roll forward, prompting Flanigan to reach into the truck, to place the shift lever into the park position, and to turn the engine off and to remove the keys from the ignition switch. It is further predicated upon the testimony of Troopers Flanigan and Winterroth that the plaintiff had difficulty standing, difficulty understanding directions, upon his failure of physical tests and odor of alcohol. He also admitted consuming some beer.

2. I find that Trooper Flanigan had probable cause to believe that the plaintiff was attempting to conceal something in his clothing from the actions Trooper Flanigan observed.

Whether the plaintiff was simply adjusting his clothing, tucking in his shirt, or whatever he was doing was easily misunderstood by the trooper. Because of his observations, Trooper Flanigan thought plaintiff was trying to hide something. It was those perceptions that he conveyed to Correctional Officer Davis and to Davis' supervisor, Sergeant Lickiss.

3. I find that Trooper Flanigan did not request a strip search of the plaintiff. He simply told and reiterated his belief that the plaintiff had something concealed in his trousers. His testimony that he hold Jailer Davis [to] "check him (the plaintiff) real good" is credible, and that Flanigan was interested in assuring that no weapon or contraband be allowed to enter the jail. This was all said before anyone knew whether Kraushaar would make bail or not. If not, he would have been detained at the jail.

4. I find no credible evidence to support a claim that either Trooper Flanigan or Trooper Winterroth used unnecessary force or indeed any force at all in effecting the arrest of the plaintiff or in transporting him to the jail.

jected plaintiff's testimony regarding the use of force in effecting the arrest. But he made no findings whatsoever regarding the credibility of Kraushaar's statements concerning the search at the scene. While it may seem likely that Kauffman found Kraushaar's testimony incredible in its entirety, this court cannot make that blanket assumption because a factfinder may believe some parts of a witness's testimony while rejecting other parts. *See United States v. Colston*, 936 F.2d 312, 315 (7th Cir.) ("Generally, juries may reject parts of a witness's testimony while accepting other parts."), *cert. denied*, 502 U.S. 951, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991).

Our discussion regarding the reasonableness of the search conducted at the jail does not dispose of the appellant's claim regarding a search at the scene of his arrest. Under the Fourth Amendment jurisprudence described above, the reasonableness of a search turns upon the need for the particular search as balanced against the level of intrusiveness. The search at the jail is justified by the need to ensure that weapons and contraband do not get into a detention facility. The alleged search at the scene, however, would come under the rubric of a search incident to arrest, which is justified by the need to ensure the safety of the officer making the arrest. A traffic arrest normally will not present the type of danger that would justify a strip search at the scene. *See Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983) (stating, in dictum, that "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street. . . .").[7]

The District of Columbia Circuit has recently upheld a search in which an officer unbuttoned a suspect's pants at the scene of the arrest. *United States v. Ashley*, 37 F.3d 678, 680–82 (D.C.Cir.1994). In that case, however, the pants were unbuttoned only enough to allow the officer to reach in and remove a bag that was sticking out the top of the suspect's underwear. The opinion further states that precautions were taken to insure the public would not see that the suspect's pants were unbuttoned. In the case at bar, on the other hand, the plaintiff's evidence suggests that he was standing behind his truck—presumably in full view of other motorists—with his pants around his thighs and his underwear exposed. Taking this evidence to be true, such a search would be much more intrusive than the search in *Ashley*.

Given the conflicting evidence, disposition of this issue necessarily turns upon the credibility of the witnesses, which is a factual matter that should be resolved by the trial court. *See Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts, and . . . the Court of Appeals should not have resolved in the first instance [a] factual dispute which had not been considered by the District Court."); 5A James Wm. Moore and Jo Desha Lucas, *Moore's Federal Practice* ¶ 52.06[2] (1994). Accordingly, we find that the judgment must be vacated as to Count VIII of the complaint and the case remanded to the magistrate

---

7. Similarly, we are unable to find that the defendant is entitled to qualified immunity. First, although the issue was raised generally in the final pre-trial order before the district court, Flanigan did not argue the point with respect to this strip search during the trial. He also did not raise the issue on appeal. Thus, the argument has been waived.

Secondly, there are several cases which suggest that qualified immunity would not exist for a strip search conducted in public view. *See Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir.1981) ("We think, as a matter of law, no police officer in this day and time could *reasonably* believe that conducting a strip search in an area exposed to the general view of persons known to be in the vicinity—whether or not any actually viewed the search—is a constitutionally valid governmental 'invasion of [the] personal rights that [such a] search entails.'"), *cert. denied sub nom. Clements v. Logan*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Iskander v. Village of Forest Park*, 690 F.2d 126, 129 (7th Cir.1982) ("Defendant naturally does not maintain that routine strip searches may be conducted in a room open to the prying eyes of passing strangers consistent with the reasonableness requirement imposed on all searches under the Fourth Amendment, nor would such a contention be entertained.") (citing *Logan*, 660 F.2d at 1014).

judge to make a specific finding on this claim.[8]

### 3. Unnecessary Force in Making the Arrest

■ The appellant's final argument is that the magistrate judge erred in rejecting his claim that trooper Winterroth used unnecessary force in effecting Kraushaar's arrest. The record shows that Winterroth admitted kicking Kraushaar's legs apart to get him spread-eagle for a pat-down search and subsequently put handcuffs upon him. But there is conflicting evidence as to whether he severely bruised Kraushaar in doing so.

Kraushaar testified that he hit his leg on the car when Winterroth kicked his legs apart and that he sustained bruises on his wrists from the handcuffs. He presented pictures of a large bruise on the front of his leg, somewhere between the knee and ankle. He also submitted medical bills and testimony that he obtained medical treatment for numbness in his hands and thumb and for testing and treatment of a bruised right leg. He argues that there was no evidence in the record to suggest that he had sustained the injuries through some other means.

Trooper Winterroth testified that he kicked Kraushaar's legs apart by forcing his foot against Kraushaar's foot to move it back and out. He argues that location of the bruise would not have an efficient point at which to apply force to spread an arrestee's legs. Thus, the bruise could not have been sustained from Winterroth directly kicking that location. Moreover, if Winterroth was attempting to move Kraushaar's legs back, his kick would not have caused Kraushaar's leg to go forward and strike the car.

The magistrate judge considered the testimony and concluded that there was "no credible evidence to support a claim that either Trooper Flanigan or Trooper Winterroth used unnecessary force or indeed any force at all in effecting the arrest of the plaintiff or in transporting him to the jail." In making this determination, he necessarily found Kraushaar's testimony regarding the cause of his bruises to be not credible. This decision, like the ruling on probable cause for the arrest, represents a choice between two equally permissible views of the evidence.[9] In deference to the magistrate judge's observation of the witnesses, we cannot say that the finding is clearly erroneous.

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly entered summary judgment in favor of defendant Davis and Tazewell County on the illegal search and seizure and assault and battery claims in Counts VI and IX of the complaint. We further find that the magistrate judge properly entered judgment in favor of defendant Flanigan on Counts II, IV, V, VII (malicious assault and battery, malicious false arrest, malicious prosecution, and excessive force) and in favor of defendant Winterroth on Count X (excessive force). However, because the magistrate judge failed to make any factual findings with respect to the alleged strip search at the scene of Kraushaar's arrest, we must remand this case for further determination on the illegal search and seizure claim against Flanigan in Count VIII. Accordingly, the district court's judgment is hereby

Affirmed in Part and Vacated and Remanded in Part.

---

8. The fact that this claim was unresolved does not affect the decision regarding the reasonableness of the search at the jail. Even if Flanigan had searched Kraushaar at the scene, that would not necessarily rule out the need for a more thorough search of Kraushaar's underwear at the jail if the search at the scene failed to produce the suspected contraband.

9. Moreover, even if Kraushaar sustained the bruises during the arrest, the officers' testimony shows that they had considerable difficulty in getting Kraushaar to comply with their requests to get spread-eagle. Thus, the officers would have had to apply some force, and perhaps cause some bruising, in order to overcome the arrestee's resistance. Under those circumstances, the force used by the officers would not be unreasonable or excessive.