**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 22, 2007
Decided March 13, 2007

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

| | |
|---|---|
| No. 06-3287 | Appeal from the United States District Court for the Western District of Wisconsin. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | |
| *v.* | No. 06-CR-064-S-01 |
| DARRELL L. LOGAN, *Defendant-Appellant.* | John C. Shabaz, *Judge.* |

**O R D E R**

After police officers strip-searched Darrell Logan and found two bags of crack between his buttocks, Logan pleaded guilty to possessing with the intent to distribute five grams or more of cocaine base. *See* 21 U.S.C. § 841(a)(1). The only issue—which he preserved in his conditional plea agreement—on appeal is whether the district court erroneously denied his motion to suppress the crack. Because the officers had reasonable suspicion that Logan was hiding drugs on his body when they conducted the search, we affirm.

Logan was arrested in Beloit, Wisconsin after a chain of events recounted at the evidentiary hearing held on his motion to suppress. Officer Roel Benavides—a drug and gang investigator with the Beloit Police Department—testified that on February 3, 2006 he received a report from a fellow officer that a white four-door

car failed to stop at stop sign. Benavides, who was on patrol near the intersection, located and stopped the car. When Benavides approached the car, he smelled burnt marijuana and recognized Logan as the driver. Benavides was familiar with Logan from previous police encounters and because he was the target of a local drug trafficking investigation. Benavides also knew that Logan had sold drugs to undercover officers in the course of that investigation. Benavides began writing a citation (in addition to running the stop sign Logan was driving on a suspended license) and requested backup and a drug-sniffing dog. The dog arrived with its handler and alerted to Logan's car. The officers then searched the car and found a "grape-sized" piece of crack in the pocket of Logan's jacket, which was lying on the car's back seat. Benavides informed Logan that he was under arrest and conducted a pat-down search, which revealed another drug (marijuana), $2,209 in cash, and two cell phones.

Neither side offered testimony at the hearing regarding the details of the strip search, but the parties agree that after the arrest, officers took Logan to the Beloit police station, and before booking him into the Rock County Jail, they conducted a strip search.[1] The officers found between his buttocks two plastic baggies containing a total of 25.76 grams of crack. In his motion to suppress Logan did not challenge the scope or manner in which the strip search was conducted; he argued that initiating the strip search violated the Fourth Amendment because, according to him, the officers had no reason to believe he was hiding drugs on his body. The district court denied the motion, explaining that because Logan had drugs hidden in his car and his clothing, it was reasonable for the officers to suspect he was also hiding drugs in his body cavities.

In challenging the suppression ruling, Logan renews his argument that at the time of the strip search, the officers had no reason to believe that he was hiding drugs on his body. Logan believes that upholding this search would authorize police to strip search anyone who was arrested for a felony drug offense. He also claims that the small amount of drugs recovered from his car and clothing were consistent with the officers' suspicion that he was merely a low-level drug dealer, so they had no reason to believe he was hiding more drugs elsewhere on his body.

This court reviews *de novo* a district court's determination that a strip search was reasonable. *United States v. Cofield*, 391 F.3d 334, 336 (1st Cir. 2004); *United States v. Brack*, 188 F.3d 748, 758 (7th Cir. 1999). The Supreme Court has recognized strip searches as a valid means to prevent detainees from smuggling

---

[1]The strip search was conducted pursuant to a Beloit Police Department policy that was not included in the appellate record.

drugs into detention facilities. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Police officers may conduct a strip search of an arrestee entering a jail when they have reasonable suspicion at the time of the search that he is concealing contraband on his body. *See Swain v. Spinney*, 117 F.3d 1, 7 (1st Cir. 1997); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1045 (7th Cir. 1995). Although jail officials may view any arrestee entering the detention system with at least a minimal amount of suspicion, *see Stanley v. Hanson*, 337 F.3d 961, 967 (7th Cir. 2003), they must have a particularized suspicion that the arrestee is harboring contraband on his body before conducting a strip search, *see Kraushaar*, 45 F.3d at 1045; *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986). That particularized suspicion may arise from such factors as "the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Way v. County of Ventura*, 445 F.3d 1157, 1162 (9th Cir. 2006); *Kraushaar*, 45 F.3d at 1045.

Under these factors the officers had reason to believe that Logan was hiding drugs on his body when they strip-searched him. He was arrested for drug possession, and before the strip search the police knew that he was a suspected drug dealer who recently had sold drugs to undercover officers. As for his appearance and conduct, although Logan did not make any statements or actions to tip off the officers that he had crack between his buttocks, *see, e.g., Brack*, 188 F.3d at 758 (strip search reasonable where minor traffic offender suspected in drug investigation asked to use bathroom upon arrival at jail); *Kraushaar*, 45 F.3d at 1046 (same where DUI arrestee made suspicious hand movements near his waistband), the officers had already found two different drugs hidden in his car and in his clothing. Aware of his current possession of concealed drugs and history of trafficking, the officers had a sufficient basis to suspect that he was hiding additional drugs underneath his clothing. *See, e.g., Applewhite v. U.S. Air Force*, 995 F.2d 997, 1000-01 (10th Cir. 1993) (strip search reasonable where arrestee had participated in undercover drug buy and pat-down revealed drugs in her purse and stockings). And because Logan was about to enter the jail, the officers had a substantial security interest in conducting the strip search "to either dispel or confirm" their suspicion that he possessed drugs. *See Kraushaar*, 45 F.3d at 1046.

Logan argues that because the amount of crack recovered from his car was consistent with the amounts of crack he sold to undercover officers in the past, the arresting officers had no reason to believe that he possessed more. This argument is unconvincing for two reasons. First, there is no evidence that Officer Benavides or any other officer present at the search knew how much crack was involved in the undercover buys. Second, Logan's argument assumes that the officers believed he was only a crack dealer, but the moment they found him in possession of marijuana in addition to crack, the officers had reason to believe his drug involvement went beyond the crack trade. Unexpectedly finding the marijuana in his clothes would

have reasonably heightened the officers' suspicion that Logan could be hiding even more drugs underneath his clothes.

Finally, Logan argues that the nature of his offense is the only factor supporting the strip search and that a strip search is unlawful if it is based only on the category of offense. In support, Logan cites *Kelly v. Foti*, 77 F.3d 819, 822 (5th Cir. 1996), where the Fifth Circuit stated that "a generalized fear of a category of arrestees" does not create a reasonable suspicion that an arrestee is hiding contraband. But other circuits, including this one, have suggested that certain categories of drug offenses may uniformly warrant strip searches. *See Way*, 445 F.3d at 1161 ("We do not disagree that in some cases, the charge itself may give rise to reasonable suspicion"); *Warner v. Grand County*, 57 F.3d 962, 964 (10th Cir. 1995) (holding that possession of marijuana provided reasonable suspicion for strip search); *Weber*, 804 F.2d at 802 (stating that crime charged can provide reasonable suspicion for strip search); *Mary Beth G. v. City of Chi.*, 723 F.2d 1263, 1273 (7th Cir. 1983) (stating that narcotics violations "are the kinds of crimes . . . that might give rise to a reasonable belief that the . . . arrestee was concealing an item in a body cavity"). However, in this case it is not simply the nature of Logan's offense, but also his history as a crack dealer and the fact that he had hidden two different drugs in two other places in his clothing that created reasonable suspicion that he might be secreting more drugs. Because the officers had a legitimate interest in preventing him from smuggling drugs into the jail, the strip search was reasonable. *See Wolfish*, 441 U.S. at 559-60; *Brack*, 188 F.3d at 758.

AFFIRMED.