Willie D. WHITE, Jr., Plaintiff–
Appellant,

v.

Rick OLIG, James M. Gilmore, and
Fond du Lac County, a municipal
corporation, Defendants–Appellees.

No. 94–3840.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1995.

Decided June 6, 1995.

Ronald Bornstein, Milwaukee, WI (argued), for plaintiff-appellant.

Thomas P. Stilp, Stilp, Cotton & Wells, Milwaukee, WI (argued), for defendants-appellees.

Before MANION and ROVNER, Circuit Judges, and WILL, District Judge.*

* The Honorable Hubert L. Will, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

WILL, District Judge.

Plaintiff was mistakenly arrested and detained in jail for three days pursuant to a civil body attachment order issued against a different individual with the same name. Subsequent to his release he brought suit against the arresting officer and the county sheriff under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. The district court granted summary judgment in favor of defendants and plaintiff now appeals. For the reasons discussed below, we affirm the grant of summary judgment, but do so on other grounds.

## BACKGROUND

During the early morning of April 27, 1991, Willie D. White and a friend were travelling through Fond du Lac County Wisconsin on their way to a weekend fishing trip. Apparently lost on a rural road, they were stopped for speeding by a local deputy sheriff, Rick Olig, who was on routine patrol. While issuing a summons to the driver, Deputy Olig noticed that White, who was in the front passenger seat at the time, was not wearing his seat belt. Intending to issue him a citation under Wisconsin's mandatory seat belt law, Olig asked White for identification, to which White responded with his name and date of birth, February 10, 1960.

Olig returned to his patrol car and proceeded to conduct a "wants, warrants and drivers status check" on White. This search, which was performed through the sheriff station and the Crime Bureau Teletype system, revealed an outstanding civil body attachment order for nonsupport from Racine County against a "Willie White,"—later revealed to be a different person with the same name—described as a six foot tall black male, weighing 180 pounds, born on February 10, 1960. After receiving this apparent match, Olig asked his communications officer to verify the status of the attachment order, which was done by teletype directly with Racine County. In response, Olig was informed that there was a valid arrest warrant for nonsupport against a "Willie White," date of birth

February 10, 1960. Due to some confusion, however, the teletyped confirmation described the intended subject as a white male.

With this information, Olig approached White, a five foot seven, 175 pound black male from Racine County, and asked him if he was aware that there was a body attachment order for nonsupport outstanding against him. In response, presumably confused due to a prior and unrelated support matter, White stated only that he thought that the matter had been cleared up. Deputy Olig, now convinced that he had located the correct person, arrested White and took him to the Fond du Lac County jail where he was held until being transported to Racine County on April 29. While in jail in Fond du Lac County, White was shown a copy of the teletype from Racine County confirming that they had a warrant for the arrest of "Willie White," and at some point it was also clarified that the warrant was for a black, rather than a white, male. Unfortunately, no other efforts were made to insure that White was the person sought in the warrant.

The actual body attachment order, which was apparently never seen by officers in Fond du Lac County or shown to White, was for a black male, date of birth unknown, approximately 40 years old, six feet tall and 180 pounds. It is not known how or why the information in the Crime Bureau Teletype system, or the information teletyped directly from Racine County, contained incorrect information about the Mr. White for whom the warrant was intended, including, strangely enough, a matching date of birth. We can only surmise that some unfortunate clerical mistake caused the records of White's prior support proceedings to be commingled with the attachment order. On April 30, however, the day after being transferred to Racine County, and after over three days in jail, White finally appeared in front of a county judge where the error was discovered and he was released.

In response to his erroneous confinement, White filed a two count complaint against Deputy Olig and Sheriff Gilmore alleging that he had been wrongfully arrested and detained. Count I was brought under 42 U.S.C. § 1983 and, liberally construed, asserted that White's Fourth Amendment rights had been violated because: (1) the warrant was facially invalid; (2) his arrest and detention were unreasonable; and (3) he was never provided with a copy of the body attachment order in violation of Wisconsin Statutes § 818.07. Count II, again liberally construed, added Fond du Lac County as a defendant and re-alleged the same complaints under a theory of state law negligence.

Upon defendants' motion for summary judgment, the district court concluded that the arrest warrant was facially valid under the Fourth Amendment, and that Deputy Olig and Sheriff Gilmore had acted reasonably, had not violated Wis.Stat. § 818.07 or any other clearly established rights, and were entitled to qualified immunity. Summary judgment was therefore granted against plaintiff on his Section 1983 claims and the state law count was dismissed without prejudice. We now review de novo.

## DISCUSSION

White seeks redress for his three day ordeal under 42 U.S.C. § 1983, alleging that his arrest and incarceration violated the Fourth Amendment. While we sympathize with his case and mistaken confinement, we find Section 1983 inapplicable to the uncontested facts.

We begin with the body attachment order under which White was arrested, and note that the Fourth Amendment, which is applied to the states through the Fourteenth Amendment, has not been interpreted to impose stringent requirements on how warrants must describe their intended subjects. In general, an arrest warrant that correctly names the person to be arrested is considered constitutionally sufficient and need not contain any additional identifying information. *Powe v. City of Chicago*, 664 F.2d 639, 645 (7th Cir.1981); *West v. Cabell*, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894). Therefore, as the district court had little trouble concluding, the body attachment order for Willie White, despite its lack of detail, was facially valid under the Fourth Amendment.

■ On appeal, White abandons his claim that the attachment order was too vague, and argues instead, for the first time, that the warrant was invalid because it failed to include a bail provision as allegedly required by Wisconsin statute. Wis.Stat. § 818.06. Regardless of the obvious waiver of this claim, we fail to see how the mandates of Wisconsin state law alter the constitutional validity of the attachment order or implicate Section 1983. It is well known that Section 1983 imposes liability only for violations of rights protected by the Constitution and laws of the United States. *Baker. v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim. *Doe v. Burnham*, 6 F.3d 476, 480 (7th Cir. 1993); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir.1985).

■ Next, White complains that regardless of the contents of the body attachment order, Deputy Olig is liable under Section 1983 because he arrested and detained the wrong Willie White. The arrest of a person named in a valid warrant, however, even if it turns out to be the wrong individual, will not violate the Fourth Amendment unless the arresting officer acted unreasonably. *Brown v. Patterson*, 823 F.2d 167, 168–69 (7th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 117 (1987); *Hill v. California*, 401 U.S. 797, 803–05, 91 S.Ct. 1106, 1110–11, 28 L.Ed.2d 484 (1971).

■ As counsel practically acknowledged at oral argument, there can be little debate about the reasonableness of White's initial arrest. The information provided to Deputy Olig indicated that there was a warrant for the arrest of "Willie White," a black male from Racine County, height six feet, weight 180 pounds, date of birth February 10, 1960. It would have been imprudent for Olig not to have arrested White, who besides having the same name, race, county of residence, birth date and approximate weight, also indicated that he apparently knew what the attachment order was about.

■ White reminds us that, after his acknowledgment of the possibility of an attachment order, he did protest to Deputy Olig that there might be some mistake and that he should check the names of the children involved. Under the circumstances, however, we find that Olig was entitled to give greater weight to White's spontaneous acknowledgment than to what might have reasonably appeared to an arresting officer to be a subsequent and meditated attempt at release. It is certainly not uncommon for the subjects of arrest warrants to object, even vociferously, when they are apprehended. Moreover, as this circuit has recognized in the past, "the peril of liability under section 1983" should not be placed upon arresting officers every time they are faced with the practical dilemma of arresting or releasing an individual who, despite some discrepancies in description, they reasonably believe to be the intended subject of an arrest warrant. *Johnson v. Miller*, 680 F.2d 39, 41 (7th Cir.1982); *Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir.1987).

White persists that, even if his arrest was legitimate under the Fourth Amendment, his subsequent detention was not. Specifically, he claims that both Deputy Olig and Sheriff Gilmore failed to provide him with a copy of the actual body attachment order as allegedly required by Wisconsin Statutes § 818.07,[1] and that they otherwise acted unreasonably in not ascertaining that they were holding the wrong Willie White. As previously explained, however, violations of Wisconsin state statutes are irrelevant to a Section 1983 inquiry, and plaintiff is misguided to rely upon them. *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1047–48 (7th Cir.1995). Moreover, although an obvious mistake was made, the conduct of Olig and Gilmore, including their failure to provide White with a copy of the attachment order, was not unreasonable and did not violate the Constitution.

---

1. Wis.Stat. § 818.07 provides, in relevant part: "Execution of Order of Arrest. The affidavit, bond and order of arrest shall be delivered to the sheriff who, upon arresting the defendant, shall deliver to him copies thereof...."

In reaching this conclusion, we recognize that state statutes sometimes create liberty interests that may in turn implicate the Fourteenth Amendment if they are deprived without procedural due process. *See Hewitt v. Helms,* 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983). However, even when such a liberty interest is created, and none is argued here, federal constitutional law continues to define the procedural protections that attach. *Colon v. Schneider,* 899 F.2d 660, 670 (7th Cir.1990). Therefore, failure to follow procedures mandated by state but not federal law, such as those White argues are required under Wis. Stat. § 818.07, can establish only a state law violation. *Kraushaar,* 45 F.3d at 1048–49; *Gordon v. Degelmann,* 29 F.3d 295, 301 (7th Cir.1994).

Despite the district court's analysis, therefore, we need not interpret Wisconsin law to conclude that whatever errors under state law Olig and Gilmore may have made, they were not of federal constitutional magnitude and are not remediable under Section 1983. What Wisconsin law requires, and whether those requirements were followed, should not be decided here. "State rather than federal courts are the appropriate institutions to enforce state rules." *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). Such restraint is particularly appropriate in this case because the state statute at issue has apparently not yet been interpreted by the Wisconsin courts. Accordingly, we do not affirm the district court's analysis of Wis.Stat. § 818.07 or its finding that Olig and Gilmore are entitled to immunity. Those issues are superfluous to the resolution of White's Section 1983 claims, and in this case are properly reserved, if there presented, for the Wisconsin state courts to resolve.[2]

Finally, we caution that our ruling does not mean that we condone the treatment that White received or believe that police officers should be able to make such mistakes with impunity. Any law abiding citizen would rightfully be disturbed to learn that he or she could be mistakenly arrested and held in jail for over three days before the mistake was discovered. While the events here do not give rise to an action under Section 1983, they may well be actionable under state law. In any event, every effort should be made to insure that they are not repeated.

### CONCLUSION

For the above stated reasons, we affirm the grant of summary judgment in favor of defendants on the grounds that the undisputed facts do not sustain a Section 1983 action, but leave the interpretation of Wis.Stat. § 818.07 as well as the issue of immunity for the Wisconsin courts to address.

---

**2.** Because there is no violation of Section 1983, it is unnecessary to consider whether Olig and Gilmore are entitled to qualified immunity. *See Kraushaar,* 45 F.3d at 1049 n. 4 (*citing Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1328 (7th Cir.1993) (Easterbrook, J., concurring)).