**James ROBINSON, Plaintiff,**

v.

**James HOWELL, Steve Hartwell, William Gallagher, T. Finke, Curt Beverage, Sheriff of Bartholomew County, and City of Columbus, Defendants.**

**No. IP 94 1221C B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 10, 1995.

---

John Emry, Franklin, Indiana, for Plaintiff.

Thomas C. Bigley Jr., Sharpnack Bigley David & Rumple, Columbus, Indiana, G. Terrence Coriden, Lawson Pushore Mote & Coriden, Columbus, Indiana, George Hoffman, III, Jones Drury Eggers & Hoffman, Franklin, Indiana, James S. Stephenson, Stephenson Daly Morow & Kurnick, Indianapolis, Indiana, for Defendants.

## ENTRY

BARKER, Chief Judge.

This matter is currently before the Court on a motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) with respect to one claim and on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to a second claim, both motions having been filed by Defendants Steve Hartwell, William Gallagher, and T. Finke. For the reasons stated below, the Court grants both motions.

### I. Background

Plaintiff James E. Robinson ("Plaintiff") alleges that on or about June 19, 1993, a Saturday, in the early hours of the morning, Columbus Police Officer Howell came to the residence of Plaintiff and his wife, Lindall. Plaintiff alleges that Howell arrested him without lawful grounds, with excessive force, with an intent to inflict injury, and without heed to Plaintiff's alleged precarious medical condition following back and neck surgery. Plaintiff alleges that fellow Columbus Police Officer Beverage, who came to the residence during Plaintiff's arrest, was remiss in his duty to intervene and prevent Howell from using excessive force on Plaintiff. Plaintiff alleges that Howell took him to Bartholomew County Jail where Howell, Hartwell, Gallagher, and Finke treated him with excessive force during his incarceration and denied him necessary medical treatment. Plaintiff alleges that he was released from jail the following Monday without having been charged with domestic violence against his wife, Lindall, which the Court assumes was the purported basis for Plaintiff's arrest. Plaintiff alleges that charges against him of disorderly conduct and resisting arrest were dismissed.

Plaintiff alleges that he has suffered physical, emotional, and reputational injury as a result of his arrest and incarceration.

On August 16, 1994 Plaintiff filed a complaint ("Complaint") requesting damages against Columbus police officers Howell and Beverage and against the City of Columbus for infringement of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, pursuant to 42 U.S.C. § 1983. The Complaint requests damages against Bartholomew County sheriff employees Hartwell, Gallagher, and Finke ("County Defendants"): (1) for infringement of Plaintiff's Eighth Amendment right to adequate medical attention while incarcerated, pursuant to 42 U.S.C. § 1983; (2) for infringement of alleged liberty interests in violation Plaintiff's Fourteenth Amendment right to due process of law, pursuant to 42 U.S.C. § 1983; and (3) for common law negligence. The Complaint also requests damages for common law negligence against the Bartholomew County Sheriff. Several motions for summary judgment have been filed and are pending. This Court previously entered an order dismissing with prejudice all claims against the Sheriff of Bartholomew County brought pursuant to 42 U.S.C. § 1983, and took under advisement County Defendants' motion to dismiss all official-capacity claims against them. See May 25, 1995 Order at 2. The Court now grants County Defendants' motion to dismiss all official-capacity claims against them. The Court also grants County Defendants' motion for judgment on the pleadings with respect to all claims against them based on infringement of any alleged state-created liberty interest.

## II. Official Capacity Liability

### A. Standard of Review

■ For purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all the allegations in a complaint "are assumed to be true." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972); *Midwest Grinding Company v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992). A plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). Nevertheless, a court is not compelled to accept conclusory allegations concerning the legal effect of facts set out in the complaint. *Baxter By Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir.1994); 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 311 (1990).

### B. Discussion

■ A personal-capacity action seeks to impose personal liability on an individual governmental actor for actions taken under color of state law; in contrast, an official-capacity suit is effectively a suit against the governmental entity which the individual governmental actor represents. *See Hafer v. Melo*, 502 U.S. 21, 24–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In this case, the Court construes Plaintiff's official-capacity claim against County Defendants as a claim against Bartholomew County. *See Lile v. Tippecanoe County Jail*, 844 F.Supp. 1301, 1307 (N.D.Ind.1992) (claim against sheriff and jail officers represent claims against county). The Supreme Court has interpreted section 1983 to bar *respondeat superior* liability against a municipal entity, such as Bartholomew County. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). *See also Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (same). Instead, municipal liability is "limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). The Court has held that a municipality, such as Bartholomew County, sanctions or orders its actions through the execution of its policy or custom "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

In *Baxter By Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994), and cases cited therein, the Seventh Circuit held that a municipality may violate an individual's civil rights: (1) through enforcement of an express policy; (2) through a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) through a single decision by a person with final policymaking authority.

■■■ Plaintiff does not sufficiently allege municipal liability. Plaintiff merely alleges that "[t]he acts, inactions, practices, and deliberate or callous indifference of Defendants caused Plaintiff to be punished without due process of law in violation of the Fourteenth Amendment of the United States Constitution." Complaint at 9. Plaintiff does not allege the existence of any express policy of Bartholomew County. While Plaintiff uses the word "practices," he does not allege a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law. Plaintiff does not allege that Hartwell, Gallagher, or Finke has final policymaking authority. In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected the imposition of heightened pleading requirements in the context of a section 1983 suit alleging municipal liability. The Court reiterated that under Federal Rule of Civil Procedure 8(a)(2) and subject only to the exceptions for pleading certain special matters set out in Rule 9, a plaintiff in federal court does not need to plead facts but may plead conclusions. *Leatherman*, 507 U.S. at ——, 113 S.Ct. at 1163; Fed.R.Civ.P. 8(a)(2) and 9. Nevertheless, in *Baxter By Baxter v. Vigo County School Corp.*, 26 F.3d 728 (7th Cir.1994), a case subsequent to *Leatherman*, the Seventh Circuit upheld the dismissal of a complaint against an official in his official capacity

where the complaint did not allege which governmental entity the official represented or what policy of that entity violated the plaintiff's rights. *Id.* at 735. The Seventh Circuit held that the plaintiff's complaint was insufficient for two reasons: (1) it failed to identify any unconstitutional policy or custom of the municipality; and (2) it failed to allege facts that would support an inference of such a policy or custom. *Id.* Significantly, the court found that "cursory conspiracy allegations" did not make out an allegation of a policy or custom. *Id.* at 736. *See also Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir.1994) ("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient") (quoting *Rodgers v. Lincoln Towing Serv.*, 771 F.2d 194, 202 (7th Cir. 1985)); *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir.1995) (noting as dicta that a plaintiff's conclusory allegations must provide a defendant with at least minimal notice of a claim).

■■■ In the instant case, Plaintiff does not even allege facts that imply the existence of an unconstitutional municipal policy or custom. Furthermore, Plaintiff fails to allege which governmental entity County Defendants represented in their official capacity. Plaintiff merely alleges that Hartwell, Gallagher, and Finke are employees of the Sheriff of Bartholomew County and that the Sheriff is responsible for the operation, policies, training, and actions of his employees. *See* Complaint at 3. The Sheriff, however, is not a municipality to which any official-capacity liability of County Defendants could be imputed.[1] Therefore, the Court finds that Plaintiff has failed to state a claim against County Defendants in their official capacity.

### III. Liberty Interest

#### A. Standard of Review

■■■ The standard that a federal district court is required to apply when ruling

---

1. In addition to the Sheriff's not being a municipality, this Court already has dismissed all claims against the Sheriff brought pursuant to 42 U.S.C. § 1983 or brought under the common law theory of *respondeat superior*. *See* May 25, 1995 Order at 1–2. The Court further ordered Plaintiff to file

contentions "as to all remaining claims" against the Sheriff. *Id.* at 2. Plaintiff subsequently filed contentions that list only state law claims against the Sheriff. *See* Plaintiff's Contentions As To Sheriff Of Bartholomew County at 1–2.

on a motion for judgment on the pleadings is not in question. The court must construe a complaint in the plaintiff's favor and only in the exceptional circumstance where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" will the court grant the motion. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court accepts as true all facts alleged in the complaint and draws all reasonable inferences from the pleadings in favor of the plaintiff. *See Baxter By Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir.1994); *Gillman v. Burlington Northern R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989).

## B. Discussion

 The Fourteenth Amendment to the United States Constitution reads in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The amendment has been construed to protect individuals against two types of governmental action. *See United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). So-called substantive due process prohibits governmental conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Id.* Where governmental action deprives an individual of life, liberty, or property without violating substantive due process standards, the action nevertheless must be implemented in a fair manner. *Id.* This last requirement is known as procedural due process. *Id. See also Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir.1995). County Defendants seek judgment on the pleadings in regard to any claim based on deprivation of an alleged state-created liberty interest. Plaintiff bases his alleged liberty interest on Article I, section 15, of the Indiana Constitution prohibiting the use of unnecessary rigor in confinement of persons and on Article I, section 16, of the Indiana Constitution prohibiting cruel and unusual

punishment. It is clear that Plaintiff is alleging that County Defendants deprived him of these alleged state-created liberty interests without *procedural* due process. *See* Resp. To Def.'s Mot. To Dismiss at 9. We therefore focus our inquiry on the requirements for stating a procedural due process claim.

 The Supreme Court directs an examination of procedural due process in two steps: first, a court must determine whether the claimant possessed a legitimate liberty or property interest and whether the state interfered with that interest; second, a court must determine whether the procedures the state followed in arriving at its decision to interfere with that interest were sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). We turn first to the issue of whether Plaintiff had a legitimate liberty interest. The Supreme Court has held that protected liberty interests may arise from the due process clause itself or from state law. *Id.; Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The Supreme Court has recognized particular state prison regulations as granting inmates an enforceable liberty interest in parole, *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), in good-time credits, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in freedom from involuntary transfer to a mental hospital, *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), and in freedom from more restrict forms of confinement within a prison, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).[2] The Supreme Court has held that a state creates such a protected liberty interest "by placing substantive limitations on official discretion." *Id.*, 490 U.S. at 462, 109 S.Ct. at 1909 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)). The Supreme Court has further held that to create a liberty interest, state regulations must contain "explicitly mandatory language, *i.e.*,

---

**2.** The Supreme Court recently limited liberty interests of inmates "to freedom from restraint which ... imposes [an] atypical and significant hardship on the inmate in relation to the ordi-

nary incidents of prison life." *Sandin v. Conner*, —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).

specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910; *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871–72; *Wallace v. Robinson,* 940 F.2d 243, 246 (7th Cir.1991), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992). Elaborating on the Court's precedent, the Seventh Circuit has held:

> Courts will find a liberty interest only if the state's statute or regulation uses language of an unmistakably mandatory character, requiring that certain procedures "shall," "will" or "must" be employed, and contains substantive standards or criteria for decisionmaking as opposed to vague standards that leave the decisionmaker with unfettered discretion.

*Kraushaar v. Flanigan,* 45 F.3d 1040, 1048 (7th Cir.1995) (internal citations and quotations omitted).

In the instant case, Plaintiff alleges that he has a liberty interest secured by the Indiana Constitution. The wording of Article I, sections 15 and 16, of the Indiana Constitution is arguably of a mandatory nature. Section 15 states that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor." Ind. Const., art. I, § 15. Section 16 states in part that "[c]ruel and unusual punishment shall not be inflicted." Ind. Cont., art. I, § 16. However, the Seventh Circuit has "repeatedly rejected the notion that any and all state ... rules and regulations containing such language automatically create 'legitimate claims of entitlement' triggering the procedural protections of the due process clause." *Kraushaar,* 45 F.3d at 1048 (quoting *Colon v. Schneider,* 899 F.2d 660, 667 (7th Cir.1990)). Furthermore, despite their arguably mandatory wording, neither constitutional provision fully fits the analytical test for a liberty interest that the Supreme Court has articulated. For example, unlike the liberty interests that the Supreme Court has recognized, *see supra,* sections 15 and 16 do not contain any substantive standard or criterium for decisionmaking; neither section sets forth specific directives to a decisionmaker that if substantive predicates are present, a particular outcome must follow.

Instead, both sections set forth an absolute bar to abusive behavior on the part of state actors. Significantly, neither section states what a state actor must do. In this respect, both sections leave a state actor with nearly unfettered discretion, such discretion being bounded only at one extreme.

 Plaintiff's liberty-interest claim fails for a more basic reason, about which the Seventh Circuit's decision in *Kraushaar v. Flanigan,* 45 F.3d 1040 (7th Cir.1995), is instructive. In that case, an appellate panel held that an Illinois strip search statute did not create a constitutionally protected liberty interest, despite the statute's provision that a police officer who conducts a strip search "shall" obtain written permission from a designated person and prepare a report regarding the search. The court reasoned:

> Under a procedural due process analysis, the deprivation of the liberty interest is not itself unconstitutional; what is unconstitutional is the deprivation without proper process (i.e. fair procedures). Thus, the appellant must go on to prove that he was denied this [liberty interest] without due process.

*Kraushaar,* 45 F.3d at 1049 (citation omitted). The court reasoned that because the appellant contended that the state could never perform a strip search without first obtaining written permission, the appellant was alleging the existence of a substantive due process right, rather than a procedural due process right. *Id. See also Miller v. Henman,* 804 F.2d 421, 427 (7th Cir.1986), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987) ("the nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides"). The appellate panel concluded that an individual may not enforce a state-created substantive due process right in federal court.

 The *Kraushaar* court's reasoning is directly applicable to the instant case. Were sections 15 and 16 to constitute liberty interests protected by *procedural* due process rights, as Plaintiff claims, a state actor theoretically could inflict cruel and unusual punishment or use excessive rigor on a person during confinement as long as the state

followed proper procedures. Clearly, this is not a tenable argument nor one that a reasonable plaintiff would even hazard to make. Plaintiff in fact is arguing that a governmental actor may never use excessive rigor or inflict cruel and unusual punishment. Thus, Plaintiff contends that through Article I, sections 15 and 16, of its Constitution, Indiana has created substantive due* process rights which are protected by the federal Constitution. The thrust of Plaintiff's argument reveals Plaintiff's misunderstanding of what substantive due process rights the Fourteenth Amendment protects. The Supreme Court has held that the due process clause prohibits a state from violating a fundamental right—that is, one that is among those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Duncan v. Louisiana,* 391 U.S. 145, 148, 88 S.Ct. 1444, 1446–47, 20 L.Ed.2d 491 (1968); *Kraushaar v. Flanigan,* 45 F.3d 1040, 1047 (7th Cir.1995). The Supreme Court has held that most of the provisions of the Bill of Rights protect such fundamental principles and therefore constitute substantive due process rights which the Fourteenth Amendment prohibits the several states from infringing. *Planned Parenthood v. Casey,* 505 U.S. 833, 845–46, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992); *Kraushaar,* 45 F.3d at 1047. While the Supreme Court has held that a state may create liberty interests protected by procedural due process rights, the Court has never held state-created interests constitute fundamental liberty interests protected by substantive due process rights under the United States Constitution. *See Kraushaar,* 45 F.3d at 1047. A state cannot legislate or otherwise determine what constitutes a fundamental principle of justice and liberty so as to be worthy of protection under the federal Constitution. *Id.* As the Seventh Circuit reasoned in *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989):

A state ought to follow its law, but to treat a violation of state law as a violation of the [federal] Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules.

*See also White v. Olig,* 56 F.3d 817, 821 (7th Cir.1995) (same); *Doe v. Burnham,* 6 F.3d 476, 480 (7th Cir.1993) (state may create its own substantive standards and provide remedies for their violation, but such substantive standards are irrelevant to question of federal due process violation). *Cf. Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976) (violation of state law is not itself a violation of the U.S. Constitution). Therefore, this Court finds that while sections 15 and 16 of article I of the Indiana Constitution may give rise to rights that can be vindicated in a state cause of action, they do not create substantive due process rights protected by the United States Constitution.[3]

## IV. Conclusion

For the reasons stated above, the Court grants County Defendants' motion to dismiss all claims brought against them in their official capacity. The Court further grants County Defendants' motion for partial judgment on the pleadings with respect to all claims based on infringement of an alleged liberty interest created by the Indiana Constitution.

It is so ORDERED.

---

**3.** Plaintiff *does* have a due process right under the Fourteenth Amendment to be free from cruel and unusual punishment and from excessive force during confinement. These substantive due process rights, however, arise from either the Fourth Amendment or the Eighth Amendment to the United States Constitution. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989) (Fourth and Eighth Amendments are two primary sources of constitutional protection against physically abusive governmental conduct).