Keith ANDERSON, Tammy Anderson, and Sara Kastin, Adam Kastin, Keith Anderson, Jr., and Chelsea Anderson by their guardian Tammy Anderson, Plaintiffs,

v.

UNITED STATES of America, Special Agent Vincent Piazza, and other agents of the Federal Bureau of Investigation whose names are currently unknown, Defendants.

No. 98–CV–4782.

United States District Court, E.D. New York.

May 18, 2000.

Yannelli, Zevin & Civardi, Mineola, N.Y. (Marvin Zevin, of counsel), for plaintiff.

Loretta Lynch, United States Attorney, Eastern Dist. of N.Y., Brooklyn, N.Y. by Paul Weingartner, Jr., Special Asst. U.S. Attorney, for defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This case concerns allegations by the Plaintiffs under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671–2680, and 42 U.S.C. § 1983 against the United States and several agents of the Federal Bureau of Investigation ("FBI"). Presently before the Court are the Plaintiffs' motion to amend the complaint and the Defendants' motion for partial summary judgment.

## BACKGROUND

The facts described below are uncontested except where otherwise noted.

On August 7, 1996, Special Agent Rocco Inneo of the FBI was operating an undercover "fencing" operation as part of a broader FBI investigation into goods stolen from cargo shipments at John F. Kennedy Airport. In the course of his operations, Inneo was introduced to an individual named "Rock" by Frank Auriemma, an associate of the Gambino organized crime family. "Rock" was driving a green Dodge van which contained $73,000 in stolen computer equipment that Inneo purchased, and that Auriemma and "Rock" helped unload.

Tracing the license plate number of the van driven by "Rock," the FBI determined that the vehicle was registered to Tammy Luzio (a.k.a. Plaintiff Tammy Anderson) ("Tammy"), at 51 Bayberry Lane in Levittown, N.Y. Further investigation revealed that the same address was once claimed as a residence on a driver's license by Ray Luzio, Jr. ("Ray"), and that telephone service at that address is in the name of "Ray Luzio." The FBI set up surveillance of the residence and observed the green van driven by "Rock" parked in Tammy's driveway on several occasions and that a person fitting the description of "Rock" appeared to reside at that address. In May 1997, Inneo was shown Ray's driver's license photo and Inneo positively identified Ray as "Rock." Based on this information, Ray was indicted on counts of theft from interstate shipments and conspiracy. An arrest warrant for "Raymond Luzio, a.k.a. Rock," was issued on May 1, 1997. On May 7, 1997, the FBI simultaneously executed some 70 arrest warrants resulting from the undercover operation, including the warrant for Ray's arrest. Because of his affiliation with a member of the Gambino crime family, the FBI instructed its agents to consider Ray "armed and dangerous."

At approximately 6:00 a.m. on the morning of May 7, 1997, eight FBI agents and two other government agents went to 51 Bayberry Lane, which, based on the FBI investigation and surveillance, they believed to be Ray's residence. At the time the agents arrived, Tammy was leaving the house. According to the complaint, the agents drew firearms and pointed them at Tammy. The agents asked Tammy if Ray was inside the house, and she indicated that Ray, who is her brother, had not lived there for several years, and that the telephone account was in the name of Ray Luzio, Sr. Two agents remained outside with Tammy while the remainder entered the open door of the house, over Tammy's objection, to search for Ray. Once inside the house, the agents located the Plaintiff Keith Anderson ("Anderson"), who the agents mistook for Ray based on the driver's license photo they had reviewed and on the basis that Anderson matched the physical description of "Rock" given by Agent Inneo. Anderson and his 3 year-old son, Plaintiff Keith Anderson, Jr. ("Keith Jr."), who were sleeping in the same bed, were awakened at gunpoint by the agents. Anderson was handcuffed and brought to the kitchen where the Plaintiffs allege he was thrown to the floor and his face shoved into a kitchen garbage can and restrained. Other agents continued searching the house for additional occupants, and encountered Plaintiffs Sara Kastin (carrying her 10–month old sister, Plaintiff Chelsea Anderson) and Adam Kastin in other rooms of the house. The parties agree that the agents drew their guns on both Sara and Adam, although the Defendants contend that it was only momentarily, until they recognized that the children were not a threat.

The agents brought all the occupants of the home into the kitchen where Anderson remained handcuffed with his face in the garbage can. Anderson insisted that he was not Ray and claimed that his driver's license out in the van would prove it. Apparently, the agents were simultaneously interrogating the children regarding the whereabouts of Ray. According to the com-

plaint, Tammy directed the agents to stop interrogating the children. Eventually, Tammy was allowed to retrieve Anderson's driver's license from the van, and once the agents determined that Anderson was not Ray, the agents removed the handcuffs from Ray and he was allowed to sit at the kitchen table. One of the children provided the agents with Ray's telephone number, and the agents left the property, although two agents stayed on briefly in order to prevent anyone from calling Ray and warning him of the agents' intentions. The parties generally agree that the entire course of events took approximately one hour.

Ray was subsequently arrested on May 7, 1997. A person who was with Ray at the time of his arrest insisted to the FBI that they had the wrong man, and that Anderson was actually the person known as "Rock." The FBI later relayed this information to Inneo, who, after reviewing another photo of Ray, agreed that Ray was not the driver of the green van. Eventually, the FBI indicted and arrested Anderson on charges of conspiracy to steal goods from an interstate shipment and possession of stolen property. In an April 1, 1998 decision in the case of *U.S. v. Keith Anderson*, 98–CR 114, United States District Judge Charles P. Sifton observed that Ray and Anderson "bear an uncanny resemblance to each other." The Plaintiffs do not expressly deny such a resemblance; in their Local Rule 56.1 Counterstatement of facts, the Plaintiffs simply state that "plaintiffs do not see this resemblance." Anderson was eventually acquitted of the charges following a jury trial.

The Plaintiffs then filed this lawsuit, naming the United States, Special Agent Vincent Piazza, and unknown agents of the FBI as Defendants. The complaint contained two causes of action, one alleging various tort claims of assault and battery, false imprisonment, false arrest, and negligence, and the other alleging a violation of the Plaintiffs' Fourth Amendment rights, although the Plaintiffs fail to otherwise explain the legal basis for the Constitutional claim.

Following discovery, the Plaintiffs moved to amend the complaint under Fed. R.Civ.P. 15(a) to specifically identify four particular agents involved by name and to omit reference to Special Agent Piazza. The proposed amended complaint made no material changes to the facts alleged or the causes of action claimed by the Plaintiffs. The Defendants oppose the amendment on the grounds of futility, and also filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The Defendants' motion contends that the Constitutional claim in the second cause of action should be dismissed, and that the amendment of the claim to add the individual defendants should be denied on the grounds that the proposed amended complaint fails to allege sufficient personal involvement of each individual Defendant in the Constitutional violations. Further, the Defendants claim that the individual Defendants are entitled to summary judgment on the basis of qualified immunity. In addition, the Defendants argue that the tort claims against the individuals are barred by the Federal Tort Claims Act, and that such claims can only be alleged against the United States.

Because the Defendants' opposition to the motion to amend is premised on essentially the same arguments as those supporting their motion for summary judgment, the Court will consider both motions together.

## DISCUSSION

Summary judgment is appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of showing that no genuine factual issue exists rests on the moving party. *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.

1994). All ambiguities must be resolved and all inferences must be drawn in favor of the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998). The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful. *D'Amico,* 132 F.3d at 149; *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997).

Fed.R.Civ.P. 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). However, leave to amend is not granted automatically or reflexively. Denial of a Rule 15(a) motion may be appropriate where the proposed amendment, if allowed, would nevertheless fail to state a cause of action and thus, granting leave to amend would be futile. *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *accord Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350; *Ruffolo v. Oppenheimer & Company,* 987 F.2d 129, 131 (2d Cir.1993).

■ The Plaintiffs' first cause of action, which alleges various torts against the Defendants, is governed by the FTCA. Section 2679(b)(1) of Title 28 states:

> The remedy against the United States ... for injury ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter....

The exclusivity of the remedy against the United States under the FTCA, requires that the United States be substituted as the party defendant upon certification by Government that the defendant employees were acting within the scope of their employment. 28 U.S.C. § 2679(d); *B & A Marine Co. v. American Foreign Shipping Co.,* 23 F.3d 709, 712 (2d Cir.1994). The United States Attorney has submitted such a certification of employment for the individual agents in this case, and therefore, any claims for tortious acts by any of the individuals are governed by the exclusivity provisions of the FTCA.

Thus, to the extent the Plaintiffs' motion to amend seeks to allege tort claims against the named individuals, the motion is denied as futile. To the extent such claims are alleged against Victor Piazza or other individual FBI agents in the original complaint, the Defendants' motion for summary judgment dismissing those claims against Piazza and the other agents is granted. The first cause of action, to the extent it alleges common-law torts, shall continue only as against the Defendant United States.

■ To the extent that the Plaintiffs allege in their Second Cause of Action that their rights to be free from unreasonable searches and seizures under the Fourth Amendment were violated by the individual Defendants, such claims are governed by the seminal case of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *see also Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). A *Bivens* claim can only be asserted against the individual alleged to have caused the Constitutional deprivation, and thus, *Bivens* claims asserted against a federal agency must be dismissed. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Thus, to the extent the Plaintiffs allege Constitutional violations against the Defendants United States, or the FBI, the Defendants are granted summary judgment on those claims.

■ The Defendants oppose amendment of the complaint to add individual

agents as Defendants on the *Bivens* claims, and seek summary judgment dismissing those claims against Special Agent Piazza on the grounds of qualified immunity. A claim of qualified immunity in a *Bivens* action is considered under the same standards as a qualified immunity defense in a Section 1983 case. *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692; *Jones v. New York State Div. Of Military and Naval Affairs,* 166 F.3d 45, 51 (2d Cir.1999). Faced with a defense of qualified immunity, the Court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692; *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). In *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court explained that the meaning of "clearly established" in this context depends largely "upon the level of generality at which the relevant 'legal rule' is to be established." 483 U.S. at 639, 107 S.Ct. 3034. While it is clearly established that the Fourth Amendment applies to the actions of federal agents, the Court in *Creighton* explained that the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. 483 U.S. at 641, 107 S.Ct. 3034. The claims of each of the Plaintiffs will be analyzed separately under these standards.

### A. As to Plaintiff Tammy Anderson

Tammy's *Bivens* claims are premised on the fact that FBI agents entered her home and detained her in violation of the Fourth Amendment. Read in the light most favorable to Tammy, the complaint might also contain an allegation that the FBI agents used excessive force, in that they drew their weapons while detaining her.

▮ Notably, the Plaintiffs do not attack the validity of the arrest warrant. An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. *Wilson,* 526 U.S. at 611, 119 S.Ct. 1692, *citing Payton v. New York,* 445 U.S. 573, 602, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *U.S. v. Lovelock,* 170 F.3d 339 (2d Cir.1999). So long as the authorities have a reasonable belief that a suspect will be found at a given residence, it is not necessary that the belief also be correct. *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Lovelock,* 170 F.3d at 342. Thus, so long as the FBI agents reasonably believed that Ray resided at 51 Bayberry Lane, their execution of the warrant at that address was proper despite the fact that their belief was erroneous.

▮ The Plaintiffs argue that the FBI did not have reason to believe that Ray lived at 51 Bayberry Lane because Ray's driver's license only gave 51 Bayberry Lane as a *former,* not current address. The Court finds this argument to be unpersuasive. Besides confirming that Ray had once listed Bayberry Lane as his residence at one time, the FBI had determined that telephone service at the house was in the name of "Ray Luzio." Agent Inneo had positively identified a man named "Ray Luzio" as the man he knew as "Rock," and the van driven by "Rock" was registered to and parked regularly at the house. Most importantly, a man fitting Ray's description had been observed by the FBI at the premises acting in a manner that suggested he resided there. While reliance on an outdated driver's license, taken alone, might not constitute a reasonable basis for believing Ray resided at 51 Bayberry Lane, the combination of facts uncovered by the FBI prior to executing the warrant support a reasonable belief that "Rock" was Ray Luzio, and that Ray could be found residing at 51 Bayberry Lane. *Accord Lovelock,* 170 F.3d at 344 ("Though Lovelock attempts to segment, isolate, and minimize each item of evidence

that contributed to the existence and reasonableness of the officers' belief, ... the totality of the information possessed by the officers gave them no reason to doubt that Williams was then a resident of the attic apartment"); *see also U.S. v. Manley,* 632 F.2d 978, 983–84 (2d Cir.1980). Since the FBI had a reasonable basis to believe that Ray resided at 51 Bayberry Lane, their entry onto the premises to execute a valid warrant for his arrest did not violate the Plaintiffs' Fourth Amendment rights.

■ The brief detention of Tammy by the agents during the execution of the warrant also does not amount to a Fourth Amendment violation. In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court rejected a Fourth Amendment claim brought by a person who was detained outside of his apartment while police executed a valid search warrant for the interior. The Court found that the detention of persons present when a judicial warrant is executed does not constitute a Fourth Amendment violation, 452 U.S. at 701, 101 S.Ct. 2587, and that detention of the property owner on the sidewalk outside the house was no more intrusive than detention within the property. 452 U.S. at 702 n. 16, 101 S.Ct. 2587. Here, the FBI detained Tammy for a reasonable period of time while the warrant was being executed and the premises secured. Since the Fourth Amendment permits such detention pursuant to the execution of a valid warrant, Tammy has failed to articulate any clearly established Constitutional right that was allegedly violated by her detention.

Finally, any *Bivens* claim by Tammy that the agents' drawing of their weapons during these events constitutes excessive force must be rejected. While the proposed amended complaint alleges that "the aforementioned agents drew and aimed their various types of firearms at the plaintiff, Tammy Anderson," Tammy was asked at her deposition "Do you recall at any point during this them being—he weapons

being directed at you," and she responded "Not that I recall." In light of this admission, the Defendants are entitled to summary judgment on any claim by Tammy of excessive force.

Thus, Tammy has failed to allege that she suffered a violation of any clearly established Constitutional right at the hands of any of the Defendants, nor does the proposed amended complaint remedy this defect. The Defendants are therefore entitled to summary judgment on Tammy's *Bivens* claims, and the Plaintiffs' motion for leave to amend the complaint to allege such claims against individual agents is denied as futile.

**B. As to Plaintiff Keith Anderson**

Anderson contends that the FBI violated his Fourth Amendment rights by mistakenly arresting him and used excessive force against him by forcing his head into the garbage can.

■ Once again, the Court begins from the premise, unchallenged by the Plaintiffs, that the FBI entered Tammy's house pursuant to a valid warrant for the arrest of Ray. The Fourth Amendment is not violated by an arrest based on a warrant supported by probable cause, even if the wrong person is arrested, so long as the arresting officer had a reasonable, good faith belief that he was arresting the correct person. *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *U.S. v. Rosario,* 543 F.2d 6, 8 (2d Cir. 1976). Here, the Plaintiffs do not allege that Anderson's arrest was motivated by bad faith. Thus, if the FBI had a reasonable basis to believe that Anderson was Ray for the brief period of time that they detained him, no Fourth Amendment violation has been alleged. In determining the reasonableness of that belief, the Court should consider the fact that police officers are often forced to make split-second judgments in situations that are often tense, uncertain, and rapidly evolving. *Graham*

*v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

At the time the FBI entered Anderson's house to execute the warrant, agents had been told that the subject of the warrant was a white male, 34 years old, and approximately 6 feet tall. In addition, the FBI agents had viewed a driver's license photo of the subject, and were aware that a man of that general physical description had been observed by FBI surveillance residing there. Upon entering the house, the agents encountered Anderson, who is admittedly a white male, who was then approximately 35 years old, and is "about" five foot ten. In light of the physical similarities between the two men, the Court finds that the agents' belief that Anderson was Ray was not unreasonable. In this regard, it is notable that Judge Sifton has previously found that Anderson and Ray "bear an uncanny resemblance to each other." However, even ignoring this finding, it is nevertheless clear from the driver's license photograph of Ray and the photograph of Anderson submitted by the Plaintiffs that the two men share some degree of physical similarity.

Furthermore, at the same time Anderson was being arrested, a sweep of the house by other FBI agents failed to turn up any other person meeting Ray's physical description, thus reinforcing their belief that Anderson must be the man they were searching for. While the Plaintiffs contend that Anderson does not resemble Ray because Ray wears a beard and long hair in his driver's license photo while Ray was clean-shaven and short-haired, the absence of any other person matching Ray's description on the property reasonably reinforced the FBI's belief that they had the correct man. Moreover, the decision to detain Anderson was premised on the FBI's knowledge that the subject of their warrant had ties to a known organized crime figure and could potentially be armed. Examined in the context of a sudden, tense confrontation with an individual who could have been armed, the Court finds that the FBI's belief that Anderson was the man named in their warrant was reasonable. *See Thompson v. Prince William County,* 753 F.2d 363, 364–65 (4th Cir.1985) (misidentification of plaintiff as the suspect was not unreasonable where the plaintiff and suspect possessed several similar attributes). Since the FBI's mistake was not unreasonable, the arrest of Anderson does not amount to a Constitutional violation.

Anderson's continued detention, despite his protests that he was not Ray, was also reasonable. It is certainly not uncommon for the subjects of arrest warrants to object, even vociferously, when they are apprehended, *White v. Olig,* 56 F.3d 817 (7th Cir.1995), and thus, police officers making an arrest are not required to investigate independently every claim of innocence by the arrestee. *Mensh v. Dyer,* 956 F.2d 36, 40 (4th Cir.1991), *citing Baker v. McCollan,* 443 U.S. 137, 145–146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Given the tense nature of the situation, the Court finds nothing unreasonable about the detention of Anderson until the protective sweep of the house was completed and the agents had an opportunity to review Anderson's identification. *Mensh,* 956 F.2d at 40 ("In the ensuing confusion, a brief detention to question Mr. Mensh's assertions, reevaluate the situation and secure the scene was prudent and 'objectively reasonable.' ").

Finally, Anderson claims that the agents used excessive force in pushing his head into the garbage can while he was handcuffed. While there may be a question of fact as to whether this degree of force was objectively reasonable under the circumstances, the Court need not reach that issue as Anderson does not specifically identify the individuals he alleges are responsible for the act. Anderson testified that a black FBI agent in charge of the team first awakened him, but that "they," meaning "a couple of assisting officers" actually handcuffed him and brought him

to the kitchen. (Proposed Defendant Stith is the black agent identified by Anderson.) Neither Anderson's deposition testimony, nor any of the other depositions in the record before the Court provide sufficient information to identify which agent is alleged to have pushed Anderson's head in the garbage can. In the absence of proof identifying the particular individual alleged to have used excessive force, Anderson cannot maintain a *Bivens* action against any individual Defendant based simply on a *respondeat superior theory. Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

Therefore, the Defendants are entitled to summary judgment dismissing Anderson's *Bivens* claims.

### C. As to Plaintiffs Adam Kastin, Sara Kastin, Chelsea Anderson and Keith Anderson, Jr.

Plaintiffs Sara Kastin, Adam Kastin, Chelsea Anderson, and Keith Anderson, Jr. each appear to assert *Bivens* claims that their Fourth Amendment rights were violated when they were briefly detained and questioned by the agents and that the agents used excessive force by pointing weapons at them during a search of the house.

As to the issue of the children's detention, these Plaintiffs fail to state a Fourth Amendment violation for the same reason that Tammy does not: namely, because police are entitled to briefly detain individuals on the premises when a valid arrest warrant is executed. *Summers*, 452 U.S. at 701, 101 S.Ct. 2587. Because the Plaintiffs do not challenge the validity of the arrest warrant, they cannot claim any Fourth Amendment violation resulting from the agents briefly detaining them until execution of the warrant was complete.

■ As to the claim that the agents drawing of weapons on the children constituted excessive force, the burden is on the

Plaintiffs to demonstrate that the amount of force used was "objectively unreasonable." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 574 (2d Cir.1996), *citing Finnegan v. Fountain*, 915 F.2d 817, 821, 823 (2d Cir.1990). In determining whether the force used by a police officer was reasonable, the court must, once again, consider the perspective of the officer at the time of the arrest, taking into account the totality of the circumstances, including the fact that the officer may have been required to make a split-second decision. *Id., citing Graham*, 490 U.S. at 397, 109 S.Ct. 1865; *Oliver v. Cuttler*, 968 F.Supp. 83, 88 (E.D.N.Y.1997).

■ The Court finds that, as a matter of law, the drawing of weapons during the incident by the FBI agents was objectively reasonable and did not constitute an excessive use of force. The Court notes that when arresting a person in a residence, officers may perform a protective sweep incident to the arrest to protect themselves or others. *U.S. v. Lauter*, 57 F.3d 212, 216 (2d Cir.1995). When executing an arrest warrant on a person that police reasonably believe to be armed and dangerous, a belief that was justified in this case by "Rock's" affiliation with organized crime figures, there is nothing inherently unreasonable about an officer conducting a protective sweep with his or her weapon drawn. Nor is it unreasonable to expect the officer to sometimes aim that weapon at an individual until an assessment can be made as to whether the individual poses a threat. Here, taken in the light most favorable to the Plaintiff, the record establishes that weapons were only pointed at Plaintiffs Adam Kastin and Keith Anderson, Jr. for a moment, and at Plaintiff Sarah Kastin for the length of time it took her to walk to the kitchen from her bedroom. Under the circumstances, the Court finds that the actions of the agents were not unreasonable. In any event, as with Anderson's excessive force claim, the Plaintiffs fail to identify with specificity the particular agent(s) who aimed the weapon

at them, and thus, fail to state a *Bivens* claim against the individual responsible. *Jett, supra.*

Therefore, the Defendants are entitled to summary judgment dismissing the *Bivens* claims by the Plaintiffs Sara Kastin, Adam Kastin, Chelsea Anderson, and Keith Anderson Jr.

Turning now to the Plaintiffs' motion for leave to amend the complaint, the Court notes that the proposed amended complaint differs from the original complaint only in that four individual agents' names are mentioned in the Second Cause of Action. The factual assertions in the proposed amended complaint are unchanged. Because the Plaintiffs have generally failed to allege that they were subjected to a violation of any clearly established Constitutional right to support their *Bivens* claims, the substitution of specific agents' names in the Second Cause of Action fails to redeem the *Bivens* claims. Moreover, the proposed amended complaint fails to allege with any particularity the specific agents responsible for the particular acts. Therefore, the Plaintiffs' motion for leave to amend the complaint is denied as futile.

### CONCLUSION

For the foregoing reasons, the Plaintiffs' motion to amend the complaint is DENIED. The Defendants' motion for summary judgment dismissing the first cause of action under the Federal Tort Claims Act against all Defendants except the United States of America is GRANTED. The Defendants' motion for summary judgment dismissing the second cause of action, alleging *Bivens* claims against the individual agents and the Federal Bureau of Investigation is GRANTED. The sole remaining cause of action is the Federal Tort Claims Act claim against the United States. Therefore, the caption of this case shall be amended to read:

KEITH ANDERSON, TAMMY ANDERSON, and SARA KASTIN, ADAM KASTIN, KEITH ANDERSON,

JR., and CHELSEA ANDERSON by their guardian Tammy Anderson

vs.

UNITED STATES OF AMERICA

The docket further reflects that all discovery was to have been completed by December 1999. Therefore, the parties are directed to appear on May 24, 2000 at 9:00 a.m. for a status conference, at which time the case will be placed on the 24–hour nonjury reserve trial calendar.

**SO ORDERED**